UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN WILLINGHAM AND JEREMY EMPOL, on behalf of themselves and all others similarly situated, | **Case No. 15-7633** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| VOLKSWAGEN GROUP OF AMERICA, INC. ("VOLKSWAGEN"), | |
| Defendant. | |

## I.      INTRODUCTION

1.      On September 3, 2015, Volkswagen Group of America, Inc. ("Volkswagen") disclosed to state and federal environmental regulators that it unlawfully manipulated the fuel emission performance of its diesel fueled 2.0 liter engine cars ("Clean Diesel Cars") to meet U.S. environmental protection standards.  For over five years, Volkswagen designed and installed specialized "defeat devices" on nearly 500,000 Clean Diesel Cars that deceptively permitted them to pass laboratory emission standard tests required for the cars to be imported and sold in the United States.  However, when Volkswagen's Clean Diesel Cars were actually on the road or the highway, they polluted at 10-40 times permissible environmental standards.  Volkswagen installed the illegal defeat devices on its diesel fueled cars, including popular models like the Jetta, Golf, Beetle, and Passat.  During this time, Volkswagen proudly marketed these Clean Diesel Cars to environmentally conscious consumers and charged premium prices for them compared to Volkswagen's standard gasoline fueled models.  As a result, Volkswagen deceived consumers into buying and leasing vehicles that were never suitable for driving in the United States because they failed to meet environmental protection standards.

2.      Plaintiffs Brian Willingham and Jeremy Empol, on behalf of a proposed class of similarly situated Volkswagen customers, bring this putative consumer protection class action against Volkswagen for damages, restitution, and injunctive relief.

## II.      JURIDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than the Defendant.  *See* 28 U.S.C.

§ 1332(d)(2)(A). This Court also has original federal question jurisdiction under 28 U.S.C. §
1331 over Plaintiffs' claims under the Magnuson-Moss Act, 15 U.S.C. §§ 2301 *et seq.* This
Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.       This Court has personal jurisdiction over Volkswagen because Volkswagen is
authorized to do business and does conduct business in the Southern District of New York, has
specifically marketed, advertised, sold, and leased its cars in this District, and has sufficient
minimum contacts with this state and/or sufficiently avails itself of the markets of this state
through its promotion, sales, and marketing of cars to render the exercise of jurisdiction by this
Court permissible.

5.       Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Volkswagen
does business in this District, has intentionally availed itself of the laws and markets within this
District through the promotion, marketing, distribution and sale of its cars in this
District. Additionally, Plaintiff Willingham resides in this District and a significant portion of
the facts and circumstances giving rise to Plaintiff Willingham's Complaint occurred or
emanated from this District.

## III.    <u>PARTIES</u>

6.       Plaintiff Brian Willingham is a resident of Katonah, New York, in the County of
Westchester.

7.       Plaintiff Jeremy Empol is a resident of West Sacramento, California, in the
County of Sacramento.

8.       Defendant Volkswagen Group of America, Inc., is a corporation with its United
States principal place of business in Herndon, Virginia. Volkswagen is responsible for the
design, manufacture, and sale of vehicles in the United States under the Volkswagen brand, as

well as for vehicles under the Audi, Bentley, Bugatti, and Lamborghini brands.  Volkswagen is a subsidiary of Volkswagen AG, a German multinational automotive manufacturing company headquartered in Wolfsburg, Germany.

## IV.   FACTUAL ALLEGATIONS

### A.   Volkswagen

9.   Volkswagen designs, manufactures, and sells automobiles throughout the world, and has gained a loyal following of American consumers that enjoy the brand's reputation for well-designed, modestly priced, fuel efficient vehicles.  Volkswagen's stated mission is to "continue to meeting our customers' wishes for individual and affordable mobility through sustainable technologies."

10.   Volkswagen's iconic Beetle model peaked sales for the company in 1970, and more recently the company has had success selling many small, mid-size and sport utility vehicles under a number of different model names, including Jetta, Passat, Golf, Tiguan, and Touareg.  Volkswagen sells approximately 400,000 vehicles per year in the United States through 650+ dealerships.  Volkswagen also sells about 180,000 vehicles per year under its Audi brand.  The company maintains a manufacturing plant in Chattanooga, Tennessee, at which it makes about 150,000 cars a year.

### B.   Volkswagen Markets and Sells Purportedly "Clean Diesel Cars"

11.   Although popular in Europe for quite some time, diesel fueled personal automobiles have not been widely marketed and sold to Americans who have historically favored gasoline fueled cars.  However, as American consumers have gravitated towards more environmentally-friendly automobiles such as hybrids and battery-operated vehicles that reduce

pollutants, diesel fueled cars have become an increasingly popular alternative to cars that run on unleaded or premium gasoline.

12.     As a European automaker, Volkswagen has been at the forefront of designing and marketing personal automobiles to Americans that run on "clean diesel" (also commonly known as ultra-low sulfur diesel).  When used in cars with turbo-charged direct injection ("TDI") engine systems, diesel run vehicles have the potential to be a "greener" alternative to other fossil fuels because of the low amounts of sulfur and the ability to implement other technologies that can clean and remove pollutants from car exhaust.

13.     In certain circumstances clean diesel vehicles can have lower emissions of most gases and particulates than most gasoline-burning engines.  And, while carbon dioxide ($CO_2$) emissions are not fully eliminated, dangerous ozone creating nitrogen oxides (NOx) and polluting particular matter can be significantly lowered.  Nitrogen oxides are reactive gases that in conjunction with other compounds can produce ozone (or smog) that can cause respiratory problems in humans and aggravate health problems like asthma, bronchitis, and emphysema.  Clean diesel vehicles can also prove to be more fuel efficient and, because of their environmental and fuel efficiency benefits, can generally cost seven percent more than comparable gasoline cars.

14.     Volkswagen has designed and sold diesel running vehicles in nearly all of its models, including Jettas, Golfs, Beetles, and Passats.  Volkswagen also markets and sells the Audi A3 model in a "clean diesel" version.  The full set of 2.0 liter diesel engine TDI Volkswagen vehicles in this case are collectively referred to herein as "Clean Diesel Cars."

15.     Volkswagen charges substantially more for its Clean Diesel Cars than it does equivalent models equipped with traditional gasoline fueled engines.  Comparing the base 2015

4

model automatic transmission gasoline fueled equivalent with its base 2015 Clean Diesel TDI

model shows the substantial upsell Volkswagen gets for its Clean Diesel Cars[1]:

| Make and Model | Base Model Price | Clean Diesel Car Price |
|---|---|---|
| VW Beetle | $21,795 | $26,431 |
| VW Golf | $20,995 | $23,445 |
| VW Golf Sportwagen | $22,495 | $25,695 |
| VW Jetta | $18,425 | $22,740 |
| VW Passat | $22,440 | $27,095 |
| Audi A3 | $29,900 | $33,200 |

16.     Volkswagen has heavily marketed its Clean Diesel Cars to environmentally-

conscious American consumers through mass media campaigns including television

commercials and print advertising.  Volkswagen hyped that its new technology wasn't "your

daddy's diesel" in marketing materials like this:

---

[1] Pricing obtained from Google.com on September 24, 2015.



17.     Just to prove how "clean" its new diesel cars were, one television ad Volkswagen featured a woman holding her clean scarf up to the exhaust pipe of a Volkswagen Golf TDI, which remains pristine after taking on the diesel exhaust.  The ad ends with the following tagline:



18.    Volkswagen's development of Clean Diesel Cars was a world-wide success, earning the company strong sales and awards.  In 2009, the Volkswagen Jetta TDI Clean Diesel won the "Green Car of the Year" Award from the Green Car Journal, a publication that focuses on environmentally friendly vehicles and technologies.  In 2010, Volkswagen picked up the same award for its Audi 2010 A3 TDI Clean Diesel (pictured below), which it flaunted in marketing and at auto shows.  In 2015, Cars.com named Volkswagen's Passat TDI its "Eco-Friendly Car of the Year."



### C.    Regulatory Requirements For Clean Diesel Cars

19.    The United States Environmental Protection Agency ("EPA") establishes regulations that ensure each vehicle sold and driven in the United States meets certain pollution emission standards compliant with the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq*.  Congress enacted the CAA in order to "protect and enhance the quality of the Nation's air

resources so as to promote the public health and welfare and the productive capacity of its population," and to "initiate and accelerate a national research and development program to achieve the prevention and control of air pollution."  42 U.S.C. § 7401(b)(1)-(2).  One of the main goals of the CAA and its regulations is to reduce the emissions of nitrogen oxides (NOx) and other pollutants from automobiles.

20.     Prior to the import or sale of any vehicle in the United States, car-makers like Volkswagen must file an application with the EPA indicating conformance with applicable environmental standards, including pollution.  Vehicles that meet the EPA's standards are issued a "certificate of compliance" ("COC") that permits the vehicle to be imported and sold in the United States.

21.     Because the EPA itself does not inspect or test each and every vehicle for compliance with pollution standards, car manufacturers are required to disclose on an application for a COC whether any vehicle contains an auxiliary emission control device ("AECD") that may impact its emissions output.  An AECD is defined as "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system."  40 C.F.R. § 86.1803-01.  If a vehicle includes an AECD, the manufacture must explain its purpose.  40 C.F.R. § 86.1844-01(d)(11).

22.     A "defeat device" is a type of AECD "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use."  40 C.F.R. § 86.1803-01.  Defeat devices are prohibited unless they are necessary under excepted conditions set forth in the regulations.  *Id*.

**D.     Volkswagen Installed Illegal Defeat Devices On Nearly 500,000 Cars**

23.     From 2009 through 2015, Volkswagen applied for and obtained COCs from the

EPA for the following Clean Diesel Cars:

| Model Year | EPA Test Group | Make and Model(s) |
|---|---|---|
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta Sportwagen |
| 2009 | 9VWXV02.0USN | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0USN | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0USN | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0USN | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen. Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jena Sportwagen, Audi A3 |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf. VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

24.     Volkswagen has sold approximately 485,000 Clean Diesel Cars in the chart above

in the United States.

25.     In 2014, West Virginia University and the International Council for Clean

Transportation fuel-emission tested Volkswagen's vehicles and published a study showing

results for Volkswagen's 2012 Jetta and 2013 Passat that revealed the vehicles regular road-use

emissions were suspiciously excessive.  The entities notified the EPA and the California Air

Resource Board ("CARB") in May 2014 of the results, who in turn notified Volkswagen of the

findings and investigation.  According to the EPA, Volkswagen initially asserted to regulators

that the test results should be attributed to unspecified technical issues and unexpected road-use

conditions, and initiated a voluntary recall.

26.     The EPA and CARB remained unsatisfied with Volkswagen's explanations and response to their inquiry, and continued investigating the source or cause of the excessive emissions from Volkswagen's Clean Diesel Cars, including through laboratory and road testing.  When Volkswagen's recall proved to not resolve the problem, CARB conducted further testing to find out why the vehicles on-board diagnostic systems were not detecting the increased emissions.

27.     In September 2015, under the threat of being denied COCs for Volkswagen's 2016 fleet, the company finally admitted that it had designed and installed defeat devices on all of its vehicles that was comprised of highly sophisticated software that could identify when a car was undergoing an emissions test in order to manipulate the results to pass, although when the car was driven in road conditions a "switch" was activated which reduced the effectiveness of the Clean Diesel Cars' emission control systems.  The result of Volkswagen's defeat device was that when the car was driven on the road, emissions of NOx were increased 10-40 times legally permitted levels, causing excessive amounts of harmful pollutants to be released.

28.     On September 18, 2015, the EPA issue Volkswagen and its parent company a notice of violation of the CAA for its knowing and intentional violation and manipulation of the United States' environmental protection regulations and COC procedures.  In step, CARB notified Volkswagen on the same date that it was in violation of California law and that its prior voluntary recall was ineffective and unapproved.

## V.     PLAINTIFFS' EXPERIENCES

29.     Plaintiff Willingham leased a new 2015 Volkswagen Golf TDI with a 2.0 liter "clean diesel" engine from a Volkswagen dealership in Danbury, Connecticut on or about September 10, 2014.  Plaintiff Willingham made an initial payment at the time of lease for

10

$2,535.43 and has been making monthly payments under his 36-month lease of approximately $289.39.

30.     Prior to taking his lease, Plaintiff Willingham was exposed to and was aware of Volkswagen's "Clean Diesel" advertising campaign.  He was interested in leasing a vehicle that would burn less fossil fuel and be better for the environment.  Plaintiff Willingham was willing, did, and continues to pay premium prices for his Volkswagen Golf because of its purportedly clean-burning engine.  Plaintiff Willingham was also aware his Golf came with a 36 month or 36,000 (whichever occurs first) warranty and reasonably assumed that it was compliant with applicable environmental regulations.  Had Plaintiff Willingham known at the time of lease that the Volkswagen Golf's diesel burning engine was not in compliance with state and federal pollution regulations, he would have leased another vehicle or paid less for his lease.  As a result of Volkswagen's conduct and course of concealment, Plaintiff Willingham has been harmed and is entitled to damages, restitution and injunctive relief.

31.     Plaintiff Empol purchased a new 2010 Jetta Sportwagen TDI with a 2.0 liter "Clean Diesel' engine from a Volkswagen dealership in Elk Grove, California in or around April 2010.  Plaintiff Empol paid $17,065 as a down payment and $33,472.36 in total including financing.  Plaintiff Empol recalls that a comparable Jetta Sportwagen without the 2.0 liter clean diesel engine was retailing for about $20,000 at that time.

32.     Prior to his purchase, Plaintiff Empol was exposed to and was aware of Volkswagen's "Clean Diesel" advertising campaign.  He was interested in purchasing a vehicle that would burn less fossil fuel and be better for the environment and had saved extra funds to purchase this specific vehicle for his family.  He also waited many months for one of these models to become available due to its popularity.  Plaintiff Empol was willing, did, and

continues to pay premium prices for his Volkswagen Jetta Sportwagen because of its purportedly clean-burning engine and estimates that he has paid premium prices over the past few years per gallon of gas for diesel fuel necessary to drive the car.  Plaintiff Empol purchased an extended warranty for his Jetta Sportwagen for 100,000 miles or 6 years (whichever occurs first) and reasonably assumed that it was compliant with applicable environmental regulations.  Had Plaintiff Empol known at the time of purchase that the Volkswagen Jetta Sportwagen's diesel burning engine was not in compliance with state and federal pollution regulations, he would have purchased another vehicle or paid less for his.  As a result of Volkswagen's conduct and course of concealment, Plaintiff Empol has been harmed and is entitled to damages, restitution and injunctive relief.

## VI.    TOLLING OR NON-ACCRUAL OF STATUTES OF LIMITATION

33.    Any applicable statutes of limitations have been tolled or have not run because Volkswagen knowingly, actively, and fraudulently concealed the facts as alleged herein. Volkswagen had actual and constructive knowledge of the wrongful courses of action alleged in this Complaint.  Plaintiffs and Class members have been kept in ignorance of information essential to the pursuit of their claims, without any fault or lack of diligence on their part. Plaintiffs and Class members reasonably relied upon Volkswagen to perform its statutory duty to comply with state and federal environmental protection laws and vehicle emission standards. Volkswagen's active concealment of these facts before, during, and after the purchases and leases of Class members' Clean Diesel Cars prevented them from being on notice of any facts or information that would have required them to inquire whether Volkswagen fulfilled its duties under the law and, if not, whether Plaintiffs and Class members had legal recourse.

34.     At all times prior to, during, and since the purchase of Plaintiffs' and Class members' Clean Diesel Cars, Volkswagen has been under a continuing duty to disclose the true facts regarding the defeat devices installed in its Clean Diesel Cars.  Because of Volkswagen's willful concealment of material information concerning the Clean Diesel Cars over a period of years, Volkswagen is estopped from relying on any statute of limitations defense as to the claims of Plaintiffs and the members of the Class.  To the extent Volkswagen asserts that it provided any notices or disclosures regarding the Clean Diesel Cars' defeat systems to Class members, whether in correspondence or otherwise, any such disclosures were incomplete, misleading, and were designed and drafted with the intent to induce reliance and inaction on the part of Class members to prevent them from asserting their legal rights.

35.     Plaintiffs and Class members did not discover the facts constituting Volkwagen's unlawful conduct until a date within the limitations period governing this action.  Plaintiffs and Class members are not at fault for not having knowledge of the unlawful conduct that Volkswagen has perpetrated given Volkswagen's extensive efforts over the course of many years, including years subsequent to their purchases and leases, to conceal defects in its Clean Diesel Cars, and its intentions to breach its warranties.  Accordingly, any statutes of limitations governing Plaintiffs' and Class members' claims should be tolled.

## VII.   CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a Nationwide Class, a New York Class, and a California Class, preliminarily defined as:

**Nationwide Class**

All persons in the United States who purchased or leased a Volkswagen Clean Diesel Car.

## New York Class

All persons in New York who purchased or leased a Volkswagen Clean Diesel Car.

## California Class

All persons in California who purchased or leased a Volkswagen Clean Diesel Car.

37.     Excluded from the proposed classes are Volkswagen; any agent, affiliate, parent, or subsidiary of Volkswagen; any entity in which Volkswagen has a controlling interest; any officer or director of Volkswagen; any successor or assign of Volkswagen; anyone employed by counsel for Plaintiffs in this action; and any Judge to whom this case is assigned, as well as his or her staff and immediate family.

38.     Plaintiffs satisfy the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party pursuant to Rule 23.

39.     **Numerosity**.  The proposed classes consist of hundreds of thousands of persons who purchased or leased a Volkswagen Clean Diesel Car making joinder of each individual member impracticable.

40.     **Commonality.**  Common questions of law and fact exist for each of the proposed classes' claims and predominate over questions affecting only individual class members. Common questions include:

   a.   Whether Volkswagen designed and installed technology and/or hardware that compromised unlawful defeat devices in its Clean Diesel Cars;

14

b.  Whether Volkswagen deceived state and federal governments by improperly certifying its Clean Diesel Cars' compliance with environmental protection and emission standards;

c.  Whether Volkswagen's Clean Diesel Cars meet state and federal environmental protection and emission standards;

d.  Whether Volkswagen breached its legal duties to consumers by failing to disclose the existence of unlawful defeat devices in its Clean Diesel Cars;

e.  Whether Volkswagen's marketing and advertising for its Clean Diesel Cars was false, deceptive, and misleading;

f.  Whether Volkswagen conducted effective recalls and repairs for its Clean Diesel Cars to gain compliance with state and federal environmental protection and emission standards;

g.  Whether Volkswagen breached its express, statutory, or implied warranties with class members;

h.  Whether Volkswagen's conduct caused Plaintiffs and the class members to suffer damages; and

i.  Whether Plaintiffs and class members are entitled to damages, restitution and injunctive relief.

41.  **Typicality**.  Plaintiffs' claims are typical of the claims of the proposed classes because, among other things, Plaintiffs and class members sustained similar injuries as a result of Volkswagen's wrongful conduct and their legal claims all arise from the same core of Volkswagen deceptive acts and practices regarding its Clean Diesel Cars.

42.    **Adequacy**.  Plaintiffs will fairly and adequately protect the interests of the classes.  Their interests do not conflict with other class members' interests and they have retained counsel experienced in complex consumer protection class action litigation to vigorously prosecute this action on behalf of the classes.

43.    In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3).  Common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to individual litigation.  The amount of damages available to individual plaintiffs is insufficient to make litigation addressing Volkswagen's conduct economically feasible in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

44.    In addition, class certification is appropriate under Rule 23(b)(1) or (b)(2) because:

    a.    the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Volkswagen;

    b.    the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

16

c.  Volkswagen has acted or refused to act on grounds that apply generally to the

proposed classes, thereby making final injunctive relief or declaratory relief

described herein appropriate with respect to the proposed classes as a whole.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301 *et seq*.**
**(On Behalf of the Nationwide Class)**

45.  Plaintiffs re-allege and incorporate by reference the allegations set forth above.

46.  Plaintiffs and the Class are consumers as defined in 15 U.S.C. section 2301(3).

47.  Defendant is a supplier and warrantor as defined in 15 U.S.C. section 2301(4)(5).

48.  Volkswagen's Clean Diesel Cars are consumer products as defined in 15 U.S.C.

section 2301(1).  The Clean Diesel Cars are subject to express written warranties and implied

warranties as defined in 15 U.S.C. § 2301(6) and (7).

49.  Volkswagen violated the Magnuson-Moss Act by breaching its express written

warranties and implied warranties with Plaintiff and Class Members because: (1) Volkswagen

was required by law to and did provide express warranties regarding the fuel emission

compliance of the Clean Diesel Cars which it was and remains at all times in breach of; (2)

because Volkswagen knew the Clean Diesel Cars were not merchantable for the ordinary

purpose of providing fuel emission compliant consumer automobiles as required by state and

federal law at the time of sale and lease; (3) because Volkswagen actively concealed the defects

in the fuel emission compliance systems within the vehicles even after being alerted by

government entities and continued to try and conceal its breaches of warranties by deceiving the

17

government and consumers and failing to offer compliant recalls, replacements, and refunds to Plaintiffs and Class Members.

50.     Plaintiffs and Class members should not be required to perform any informal dispute settlement procedure with Volkswagen due to Volkswagen's continuous deceptive conduct, including but not limited to, prior deceptive and ineffective recalls that did not resolve the pollution compliance issues with the Clean Diesel Cars.  Providing further opportunities for Volkswagen to continue to act in bad faith and deceive consumers with ineffective recalls or refusal to provide replacements and refunds would be futile and unjustly continue to damage Plaintiffs and Class members' whose rights under the Magnuson-Moss Act would continue to go unprosecuted.  Still, with this Complaint Plaintiffs are providing Volkswagen an opportunity to remedy the alleged breaches in the Clean Diesel Cars and pay Plaintiffs and Class members damages for Volkswagen's breaches of its warranties.

51.     Because of Volkswagen's conduct in violation of the Magnuson-Moss Act, Plaintiffs and Class members have suffered economic harm and losses including, but not limited to, the purchase and lease of Clean Diesel Cars they would not have otherwise purchased or leased, paying more for Clean Diesel Cars than they would have otherwise paid, and the diminution in value of the resale ability of Clean Diesel Cars that are non-compliant with state and federal fuel emission.   Pursuant to 15 U.S.C. section 2310, Volkswagen is liable to Plaintiffs and Class members for damages, equitable relief, attorneys' fees, costs of suit, and any other relief the Court may provide.

## SECOND CAUSE OF ACTION

**Violations of New York and California Consumer Protection Laws**
**New York General Business Law § 349 and & California's Unfair Competition Law,**
**California Business and Professions Code § 17200**

**(On behalf of the New York and California Sub-Classes, Respectively)**

52.     Plaintiffs re-allege and incorporate by reference the allegations set forth above.

53.     Under New York's General Business Law, section 349, all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  Similarly, California's Unfair Competition Law, Business and Professions Code section 17200, prohibits all unlawful, unfair, and fraudulent conduct.

54.     Volkswagen's unlawful, unfair, fraudulent, and deceptive acts or practices (including omissions) have violated New York's and California's consumer protection laws, by among other things: (1) designing, manufacturing, marketing, selling, and leasing Clean Diesel Cars to Plaintiffs and Class members that did not comply with state and federal fuel emission laws and standards, including the CAA; (2) designing, manufacturing, marketing, selling, and leasing Clean Diesel Cars to consumers that contained material, fundamental defects regarding the vehicles' fuel emission compliance and included unlawful defeat devices without disclosing such defects to consumers; (3) misrepresenting the purported environmental benefits of purchasing or leasing a Clean Diesel Car that actually polluted the environment at rates 10-40 times the applicable state and federal regulations; (4) actively engaging in a course of orchestrated conduct over a period of many years to defraud state and federal governments and consumers regarding the fuel emission compliance of its Clean Diesel Cars; (5) engaging in false advertising; (6) violating the Magnuson-Moss Warranty Act as set forth herein; (7) violating California's Song-Beverly Consumer Warranty Act as set forth herein; and (8) breaching its express and implied warranties as set forth herein

55.     Plaintiffs and Class members have been harmed and have suffered economic losses due to Volkswagen's conduct in violation of New York's and California's consumer protection laws because, among other things, they have purchased and leased Clean Diesel Cars they would not have otherwise purchased or leased, paid more for Clean Diesel Cars than they would have otherwise paid, suffered a diminution in value of the resale ability of Clean Diesel Cars that are non-compliant with state and federal fuel emission standards, and paid the increased costs of diesel fuel.

56.     The utility of Volkswagen's conduct as described in this Complaint is outweighed by the gravity of the consequences to Plaintiffs and Class members and Volkswagen's conduct as described in this Complaint is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs, Class members, and the general public due to the environmentally damaging impact of Volkswagen's Clean Diesel Cars.

57.     Plaintiffs, on behalf of themselves and Class members, have suffered injury as a direct and proximate result of Volkswagen's fraudulent, unlawful and unfair business practices and are therefore entitled to equitable relief, including restitution, damages, disgorgement of profits Volkswagen gained obtained from its deceptive, fraudulent, unlawful and unfair business practices, and a permanent injunction that enjoins Volkswagen from the unlawful practices described herein, as well as attorneys' fees and costs of suit.  N.Y. Gen. Bus. Law § 350; Cal. Bus. & Prof. Code § 17203.

### THIRD CAUSE OF ACTION

**Violations of New York and California False Advertising Laws**
**New York General Business Law § 350 & California's False Advertising Law, California Business and Professions Code § 17500**
**(On behalf of the New York and California Sub-Classes, Respectively)**

58.     Plaintiffs re-allege and incorporate by reference the allegations set forth above.

59.     Under New York's General Business Law, section 350, "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."  Similarly, California's Business and Professions Code section 17500 makes it unlawful for any person or company to disseminate any statement that is untrue or misleading regardless of the medium the statement is disseminated, including via the Internet.

60.     At all material times, Volkswagen's advertising and marketing materials for its Clean Diesel Cars, including those cited in this complaint, misrepresented or omitted to state that the Clean Diesel Cars did not at any time comply with state and federal fuel emission standards, and that, in fact, the Clean Diesel Cars polluted at many times in excess of state and federal fuel emission standards.  Volkswagen's acts and practices have deceived and/or are likely to deceive Plaintiffs, members of the Class, and the public.

61.     In making and disseminating its false and misleading advertising regarding its Clean Diesel Cars, Volkswagen knew and had actual knowledge that its advertisements were untrue and misleading.  Plaintiffs and Class members were exposed to Volkswagen's marketing and advertising and made decisions to purchase and lease Clean Diesel Cars in substantial part because of Volkswagen's misrepresentations and omitted material facts.

62.     Due to Volkswagen's conduct, Plaintiffs and the Class members are entitled to relief, including enjoining Volkswagen to cease and desist from engaging in the practices described herein.

**FOURTH CAUSE OF ACTION**

**Breach of Express Warranty**
**(On behalf of the New York and California Sub-Classes, Respectively)**

63.     Plaintiffs re-allege and incorporate by reference the allegations set forth above.

64.     Volkswagen is the designer, manufacturer, distributor and seller of Clean Diesel Cars that were required to and did expressly warrant in writing the compliance of Clean Diesel Cars with state and federal fuel emission standards.  Volkswagen also entered into express written warranties with Plaintiffs and Class members that covered all defects in the vehicles for a minimum of 3 years or 36,000 miles (with options to purchase extended warranties of greater lengths).  Plaintiffs and Class members reasonably relied on Volkswagen's legally required and/or express warranties which were included with the purchase and lease of their Clean Diesel Cars.  Volkswagen's express warranties became part of the bases of the bargains between Volkswagen and Class members, creating express warranties that the Clean Diesel Cars purchased by Plaintiffs and the Class members would conform to Volkswagen's warranties.

65.     Volkswagen breached its express warranty by selling and leasing Clean Diesel Cars that it knew were not compliant with state and federal fuel emission standards and were not free from defects, but did not disclose these facts or the existence of any defects.

66.     Volkswagen was aware of the defects in the Clean Diesel Cars at the time it sold and leased them to Plaintiffs and Class members and throughout their warranty periods.  As a result of Volkswagen's breach of its express warranties, Plaintiffs and Class members have suffered damages because they have purchased or leased Clean Diesel Cars they would not have otherwise purchased, paid more for Clean Diesel Cars than they would have otherwise paid, and suffered a diminution in value of their Clean Diesel Cars that are not suitable for resale. Plaintiffs and Class members are entitled to receive damages from Volkswagen in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability**
**(On behalf of the New York and California Sub-Classes, Respectively)**

67.　　Plaintiffs re-allege and incorporate by reference the allegations set forth above.

68.　　Volkswagen marketed and sold Clean Diesel Cars to function for the purpose of providing environmentally-friendly fuel efficient cars with minimal pollution impact and that, at a minimum, the Clean Diesel Cars were merchantable for the purpose of compliance with the minimum fuel emission standards set by state and federal governments.  Plaintiffs and Class members purchased and leased Clean Diesel Cars to function for the purpose of driving environmentally-friendly fuel efficient cars with minimal pollution impact and that, at a minimum, the Clean Diesel Cars would work for the purpose of driving cars in compliance with the minimum fuel emission standards set by state and federal governments.

69.　　Volkswagen's Clean Diesel Cars suffered from fundamental defects which rendered the Clean Diesel Cars unmerchantable and unfit for sale and use because they were at all times defective to the extent that they did not comply with minimum state and federal fuel emission standards and were therefore not approved for any driving use in the United States. Further, Volkswagen's Clean Diesel Cars were unmerchantable for the purpose of providing environmentally friendly fuel efficient cars with minimal pollution impact because they, in fact, polluted the environment at multiples of 10-40 times the state and federal regulations.

70.　　Volkswagen was aware of the fuel emission defects in the Clean Diesel Cars at the time it sold and leased them to Plaintiffs and Class members and during their warranty periods.  As a result of Volkswagen's breach of implied warranties, Plaintiffs and Class members have suffered damages because they have purchased or leased Clean Diesel Cars they would not

have otherwise purchased, paid more for Clean Diesel Cars than they would have otherwise paid, and suffered a diminution in value of their Clean Diesel Cars that are not suitable for resale. Plaintiffs and Class members are entitled to receive damages from Volkswagen in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Fraud
### (On behalf of the New York and California Sub-Classes, Respectively)

71.     Plaintiffs re-allege and incorporate by reference the allegations set forth above.

72.     Volkswagen designed and manufactured Clean Diesel Cars that contained specially designed defeat devices that were intended to conceal the fact that Clean Diesel Cars did not meet state and federal fuel emissions standards and were not fit for sale in the United States.

73.     Meanwhile, Volkswagen aggressively marketed and advertised to consumers in the United States that its Clean Diesel Cars were environmentally-friendly and that they not only complied with minimum state and federal fuel emission standards, but that they were also cleaner for the environment than traditional, less expensive vehicles that ran on gasoline.

74.     At all times relevant herein, Volkswagen purposefully concealed from state and federal governments and consumers that its cars did not comply with fuel emissions standards and that they did not contain illegal defeat devices intended to produce false compliance with those standards.  Volkswagen knowingly engaged in this fraudulent and deceptive conduct because it intended to induce reliance from Plaintiffs and Class members into purchasing and leasing its Clean Diesel Cars.

24

75.     Plaintiffs and Class members did not know, nor could they know, that the Clean Diesel Cars were not compliant with state and federal fuel emission standards and that they were installed with illegal defeat devices.  Volkswagen had a legal duty under the CAA to disclose to the EPA that its cars were installed with defeat devices, were not compliant with federal fuel emission standards, and had a duty to disclose the same information to consumers.  Additionally, Volkswagen had a duty to disclose to Plaintiffs and Class members that the Clean Diesel Cars it was selling and leasing not only did not comply with state and federal fuel emission standards, but greatly exceeded them thereby causing greater pollution than other readily available cars.

76.     As a result of Volkswagen's fraudulent and deceptive conduct, which it engaged in for the purpose of obtaining ill-gotten monies, Plaintiffs and Class Members have suffered damages because they have purchased or leased Clean Diesel Cars they would not have otherwise purchased, paid more for Clean Diesel Cars than they would have otherwise paid, and suffered a diminution in value of their Clean Diesel Cars that are not suitable for resale.  Plaintiff and Class members are entitled to receive damages from Volkswagen in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment
### (On behalf of the New York Sub-Class)

77.     Plaintiff Willingham re-alleges and incorporates by reference the allegations set forth above.

78.     By providing remuneration to Volkswagen for the purchase and lease of their Clean Diesel Cars, Volkswagen was enriched.

79.     Due to Volkswagen's deceptive, fraudulent, and unlawful conduct as alleged in this Complaint, it would be against equity and good conscious to permit Volkswagen to retain any monies from the sale and lease of Clean Diesel Cars that were never fit for sale, or at a minimum, Volkswagen's ill-gotten profits from the sale and lease of its Clean Diesel Cars.

80.     Accordingly, Plaintiff Willingham and Class members are entitled to restitution and other relief that would divest Volkswagen of all funds by which it was unjustly enriched that can then be re-distributed to Plaintiff and Class members in a fair and equitable manner.

## EIGHTH CAUSE OF ACTION

**Violation of California Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.***
**(On behalf of the California Sub-Class)**

81.     Plaintiff Empol re-alleges and incorporates by reference the allegations set forth

82.     Plaintiff Empol and the Class members are "consumers" that purchased "goods" in the form of Volkswagen's Clean Diesel Cars primarily for personal, family or household purposes within the meaning of Civil Code section 1761.

83.     Volkswagen is a "person" within the meaning of Civil Code section 1761(c).

84.     Volkswagen violated California Consumer Legal Remedies Act, Civil Code section 1770(a)(2) by misrepresenting the approval and certification of the Clean Diesel Cars with respect to their fuel emissions, Civil Code section 1770(a)(5) by representing that the Clean Diesel Cars have characteristics, uses or benefits, which they do not have, and Civil Code section 1770(a)(7) by representing that the Clean Diesel Cars are of a particular standard, quality, or grade, even though they are of another. Such conduct includes, among other things: (1) designing, manufacturing, marketing, selling, and leasing Clean Diesel Cars to Plaintiff and Class members that did not comply with state and federal fuel emission laws and standards,

including the CAA; (2) designing, manufacturing, marketing, selling, and leasing Clean Diesel Cars to consumers that contained material, fundamental defects regarding the vehicles' fuel emission compliance and included unlawful defeat devices without disclosing such defects to consumers; (3) misrepresenting the purported environmental benefits of purchasing or leasing a Clean Diesel Car that actually polluted the environment at rates 10-40 times the applicable state and federal regulations; (4) actively engaging in a course of orchestrated conduct over a period of many years to defraud state and federal governments and consumers regarding the fuel emission compliance of its Clean Diesel Cars; (5) engaging in false advertising; (6) violating the Magnuson-Moss Warranty Act as set forth herein; (7) violating California's Song-Beverly Consumer Warranty Act as set forth herein; and (8) breaching its express and implied warranties as set forth herein.

85.     Pursuant to California Civil Code sections 1752, 1780, and 1781, Plaintiff Empol, on behalf of himself other Class members, seeks restitution of property, distribution of notice to the Class, an order of this Court enjoining Volkswagen from the unlawful practices described herein and requiring Volkswagen to conduct recalls and provide refunds, as well as an award of costs of litigation and attorneys' fees.

86.     Pursuant to California Civil Code section 1782, Plaintiff Empol is notifying Volkswagen in writing of the particular violations of section 1770 of the Consumers Legal Remedies Act via a certified letter, return receipt requested.  Should Volkswagen fail to adequately respond to Plaintiff's notice within 30 days, Plaintiff will amend his complaint to seek actual and punitive damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### Violation of California's Song-Beverly Consumer Warranty Act,

**California Civil Code § 1790,** *et seq***.**
**(On behalf of the California Sub-Class)**

87.     Plaintiff Empol incorporates by reference and realleges all paragraphs previously alleged herein.

88.     Volkswagen violated the Song-Beverly Consumer Warranty Act, by, among other things: (a) violating the implied warranties of merchantability by selling Clean Diesel Cars to Plaintiff and Class Members while knowing that the Clean Diesel Cars were defective, unreliable, and not suitable for driving in the United States in violation of sections 1791.1 and 1791.2, and therefore were not fit for the ordinary purpose for which the goods were sold; (b) breaching its legally required and express warranties that Clean Diesel Cars were not compliant with state and federal fuel emission standards and were not free from defects, but did not disclose these facts or the existence of any defects; (c) by failing to provide adequate service and repair facilities in the State of California with sufficient service literature and replacement parts during the one-year express warranty period in violation of section 1793.2.

89.     Plaintiff Empol and Class members have been harmed by Volkswagen's violations of the Song-Beverly Consumer Warranty Act and are entitled pursuant to Civil Code section 1794 to damages and other equitable relief necessary to bring Volkswagen into compliance with the Song-Beverly Consumer Warrant Act including, but not limited to, issuing notice to Class members about the defects in its Clean Diesel Cars and maintaining appropriate service and repair facilities with replacement parts for a period of seven years after the manufacture of the last Clean Diesel Car.  Plaintiff and Class members also seek an award of costs of litigation and attorneys' fees.

**IX.**   <u>**JURY DEMAND**</u>

90.   Plaintiffs hereby demand a jury.

**X.**   <u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs request of this Court the following prayer for relief, on behalf of themselves and Class members:

A.   An order certifying the Nationwide Class and the New York and California Sub-Classes pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiffs and their undersigned counsel to represent the Classes;

B.   An award of compensatory, actual, consequential, and punitive damages in an amount to be determined at trial;

C.   Restitution and disgorgement of profits;

D.   Awarding pre- and post- judgment interest;

E.   Injunctive relief;

F.   Declaratory relief;

G.   Attorneys' fees, costs and expenses of suit, including expert witness fees; and

H.   Such other relief as the Court may deem appropriate.

Dated:  September 28, 2015          **KAPLAN FOX & KILSHEIMER LLP**

By:  /s/ *Frederic S. Fox*

Frederic S. Fox
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: ffox@kaplanfox.com

Laurence D. King
Linda M. Fong (*pro hac vice* to be filed)
Matthew George (*pro hac vice* to be filed)
Mario M. Choi
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:   415-772-4707
Email: lking@kaplanfox.com
        lfong@kaplanfox.com
        mgeorge@kaplanfox.com
        mchoi@kaplanfox.com

Justin B. Farar (*pro hac vice* to be filed)
Kaplan Fox & Kilsheimer LLP
11111 Santa Monica Blvd.
Suite 620
Los Angeles, CA 90025
phone: (310) 614-7260
fax: (310) 575-8697
Email: jfarar@kaplanfox.com

*Attorneys for Plaintiffs.*